IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPS TECHNOLOGIES, LLC d/b/a PB FASTENERS,<br><br>Petitioner,<br><br>v.<br><br>THE BOEING COMPANY,<br><br>Respondent. | Case No. _____<br><br>Case in Other Court: *SPS Technologies, LLC d/b/a PB Fasteners v. Briles Aerospace, Inc. et al.*, Case No. 2:18-cv-09536-MWF-AS (C.D. Cal.) |

**MOTION TO ENFORCE SUBPOENA FOR THE PRODUCTION OF
DOCUMENTS ISSUED TO THE BOEING COMPANY**

Pursuant to Federal Rule of Civil Procedure 45, SPS Technologies, LLC, d/b/a PB Fasteners ("PB Fasteners") respectfully moves this Court, through undersigned counsel, to order The Boeing Company ("Boeing") to produce documents in accordance with a subpoena served on March 7, 2019 (the "Subpoena") in connection with *SPS Technologies, LLC d/b/a PB Fasteners v. Briles Aerospace, Inc. et al.*, Case No. 2:18-cv-09536-MWF-AS (C.D. Cal.). Ex. 1.

1. PB Fasteners served the Subpoena on Boeing as part of ongoing trade secrets litigation in the United States District Court for the Central District of California. Boeing has refused to produce relevant documents, claiming without legal support that the subpoena is unenforceable and that PB Fasteners must stipulate to a "voluntary production" by Boeing before any documents will be produced. In accordance with Local Rule 37.2, PB Fasteners attempted to resolve the dispute by meeting and conferring with Boeing by telephone on March 27 and April 19, and by letters dated March 19, March 27, March 29, April 5, April 11, April 16, April 23,

April 26, and April 30. Exs. 2–10. Notwithstanding these efforts, Boeing is unwilling to produce key documents relating to the core issues in dispute, many of which are in Boeing's exclusive possession. In light of Boeing's intransigence, and given the accelerated schedule in the underlying case, PB Fasteners seeks consideration of this Motion to allow for the production of indispensable documents before the close of discovery on June 28, 2019.

2. In the underlying dispute pending in the United States District Court for the Central District of California, PB Fasteners alleges that Defendant Briles Aerospace, Inc. misappropriated PB Fasteners' trade secrets and disrupted its contractual and business relations with Boeing.[1] The trade secrets at issue are essential to the manufacture of an advanced-concept aerospace fastener called the SLEEVbolt® or tapered sleeve bolt. *See* Ex. 11, at ¶¶ 1, 24 (First Amended Complaint, "FAC"). The SLEEVbolt® combines a tapered bolt made of titanium or nickel superalloy inside a stainless steel sleeve. The precise interaction between the tapered bolt and sleeve provide critical lightning strike protection in composite structures like Boeing's 787 and 777X aircraft. *Id*. at ¶ 43 (FAC). As a result, Boeing is the dominant consumer in the domestic SLEEVbolt® market. Until late 2018, PB Fasteners was the exclusive manufacturer of the SLEEVbolt® for Boeing.

3. PB Fasteners alleges that Boeing, a non-party, worked with Briles Aerospace toward the misappropriation of PB Fasteners' proprietary information and trade secrets by Briles Aerospace. *Id.* at ¶¶ 10, 78–96, 153–77. Boeing's refusal to produce relevant documents in response to the Subpoena is designed to hide its misconduct.

---

[1] PB Fasteners has limited its discussion of facts in this Motion to avoid disclosing information that is subject to the Protective Order in the underlying dispute. PB Fasteners believes that the facts contained herein are sufficient to resolve the discovery dispute. If the Court would like additional context for the Motion, PB Fasteners will provide it under seal at the hearing or in supplemental briefing at the Court's request.

4.　　After years of significant investment and development at Boeing's request, PB Fasteners and Boeing signed a contract in 2016 that requires Boeing to purchase 90% of its SLEEVbolt® requirements for its 787 aircraft from PB Fasteners (although PB Fasteners in fact was the only qualified manufacturing source for these products and therefore produced 100% of Boeing's SLEEVbolt® requirements). *Id.* at ¶ 44. However, unbeknownst to PB Fasteners, at the same time Boeing signed this contract, Boeing also began pitching PB Fasteners' proprietary product to alternate suppliers. Boeing ultimately settled on Briles Aerospace and Lisi Aerospace Canada[2] ("Lisi") as potential alternate suppliers of a tapered sleeved bolt, and began to work with them in secret to develop a replica of the SLEEVbolt® and to find ways to circumvent Boeing's contract with PB Fasteners. *Id.* at ¶¶ 90–96.

5.　　For example, Boeing and Briles Aerospace worked together to develop a new Request for Proposal ("RFP") for tapered sleeve bolts in September 2018, which gave Boeing a pretext for breaching its contractual obligations to PB Fasteners. The new RFP called for a minor design revision by including a small machined "notch" in the head of the tapered bolt. This revision is irrelevant to the actual functioning of the SLEEVbolt®, yet Boeing has taken the position that the "notched" SLEEVbolt® is no longer subject to its contract with PB Fasteners. *Id.* at ¶¶ 79–85. Thus, although Boeing is not a named party in the current trade secrets lawsuit, it bears responsibility for the dispute, plays a central role in the case, and has a direct financial interest in the outcome.

6.　　PB Fasteners served the Subpoena on Boeing more than two months ago to obtain discovery in Boeing's possession, including materials that PB Fasteners cannot get from any other source. *See* Ex. 1. The Subpoena includes 19 requests that seek three categories of

---

[2] Litigation between PB Fasteners and Lisi is ongoing in Montreal Superior Court. Boeing also facilitated Lisi's misappropriation.

documents: (1) Communications between Boeing, on the one hand, and manufacturers of tapered sleeve bolts and their agents, on the other, relating to the development, manufacture, and sale of tapered sleeve bolts, as well as the litigation between PB Fasteners and Briles Aerospace (Requests 1–10); (2) Boeing documents relating to the qualification of suppliers and the development and/or manufacture of tapered sleeve bolts (Requests 11–14, 18, 19); and (3) Documents relating to Boeing's actual and potential purchases of tapered sleeve bolts from any manufacturer (Requests 15–17).

7. Boeing first asserted a litany of boilerplate objections to the Subpoena. *See* Ex. 2; *cf. Kelley v. Bd. of Educ. of City of Chicago*, 2012 WL 1108135, at *2 (N.D. Ill. Apr. 2, 2012) (finding boilerplate objections improper and waived). During subsequent Local Rule 37.2 negotiations, Boeing took the position that it "is not obliged to produce documents in response to the Subpoena" but agreed "as a matter of comity . . . to make a voluntary production." Ex. 4. Boeing then unilaterally and unreasonably limited the scope of its "voluntary production," including by asserting that only documents relating to Briles Aerospace were relevant. Based on this position, Boeing further refused to produce any documents relating to the development and manufacture of tapered sleeve bolts unless those documents specifically referred to Briles Aerospace. Boeing also refused to conduct a reasonable search for documents containing PB Fasteners' trade secret dimensions that were stolen by Briles Aerospace, and which would not refer to Briles Aerospace by name, despite the fact that Boeing now has exclusive possession of such documents by operation of its specialized communications portal (known as "MessageCourier").[3] Boeing also refused to provide information relating to its purchases of tapered sleeve bolts, which are relevant to PB Fasteners' damages and cannot be obtained from

---

[3] The MessageCourier system automatically deletes communications unless they are downloaded by a Boeing employee. *See* Ex. 6, at 3.

any other source. *See* Ex. 9.

8. Because the business address for Boeing is in Chicago, Illinois, this Court has jurisdiction to enforce the Subpoena. See Fed. R. Civ. P. 45(f). "The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Young v. City of Chicago*, 2017 WL 25170, at *8 (N.D. Ill. Jan. 3, 2017). Rule 26(b)(1) provides for "discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevancy is construed broadly "to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Wi-LAN, Inc. v. LG Elecs., Inc.*, 2011 WL 148058, at *2 (N.D. Ill. Jan. 18, 2011*), quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Proportionality is determined by the six criteria identified in Rule 26(b)(1): "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

9. The documents sought in the Subpoena are not merely relevant; they are central to the claims and defenses in the litigation between PB Fasteners and Briles Aerospace. Among other things, Boeing's communications (Requests 1–10) and documents (Requests 11–14, 18, 19) are relevant to the nature of Boeing's search for an alternate supplier, whether reasonable steps have been taken to maintain the secrecy of PB Fasteners' trade secrets,[4] whether PB Fasteners' trade secrets are generally known or readily ascertainable,[5] and whether PB Fasteners'

---

[4] *See Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 57 (2014) (public disclosure relevant to whether information is protectable as a trade secret).
[5] *See* 18 U.S.C. § 1839(3)(B) (trade secrets are not generally known or readily ascertainable).

trade secrets are subject to reverse engineering.[6] Other manufacturers have had substantial difficulties in re-creating the SLEEVbolt®, and the only manufacturers to have done so successfully leaned heavily on Boeing's assistance. Ex. 11 ¶¶ 49–52, 90–96. As for purchase documents (Requests 15–17), the scope of Boeing's demand and diversion of orders to Briles Aerospace is relevant to whether Briles Aerospace has disrupted the contractual and business relationship between Boeing and PB Fasteners, as well as to the harm to PB Fasteners' business. This is particularly true because Briles Aerospace contends that any orders it receives from Boeing could have gone to other manufacturers. Boeing is the only source for this information.

10. The documents sought in the Subpoena also are proportionate to the needs of the case, particularly given their importance to the litigation, as well as Boeing's exclusive possession of significant information. Additionally, Boeing's vast resources and sophistication, its dominant position in the SLEEVbolt® market, its deep involvement with the development of tapered sleeve bolts by other manufacturers, and its efforts with Briles Aerospace to circumvent PB Fasteners' contract, all reflect that the requested discovery is both relevant and proportional.

11. PB Fasteners has worked with Boeing in an attempt to reduce any purported burden of this production by identifying only key custodians and proposing search terms that were narrowly tailored to PB Fasteners' proprietary product. Boeing has refused these proposals, however, and has not shown that the requests are unduly burdensome with the required specificity. *See Young*, 2017 WL 25170, at *9 ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant . . . with specificity."). Nor is there risk that Boeing's sensitive information will be disclosed or otherwise misused, as the protective order in the underlying litigation will allow Boeing to designate all

---

[6] *See* 18 U.S.C. § 1839(6)(B) (reverse engineering is a proper means of ascertaining a trade secret).

such information "Confidential" or "Attorney's Eyes Only." *See* Ex. 12; *Polyone Corp. v. Lu*, 2015 WL 9489915, at *8 (N.D. Ill. Dec. 30, 2015).

12. For these reasons, PB Fasteners respectfully requests that this Court order Boeing to comply with the Subpoena in full. The underlying lawsuit is on an accelerated schedule, which requires the completion of all fact discovery by June 28, 2019. In light of this approaching deadline and Boeing's refusal to provide any responsive documents, PB Fasteners respectfully requests consideration of this Motion on an expedited basis. PB Fasteners believes that the Motion can be argued and resolved at the presentation hearing. However, if the Court would like additional briefing on the issues raised in the Motion, PB Fasteners respectfully requests that the Court order an expedited briefing and argument schedule to ensure production of responsive documents before the close of discovery.

WHEREFORE, SPS Technologies, LLC, d/b/a PB Fasteners, respectfully requests that the Court enforce the Subpoena attached hereto as Ex. 1 in full; that the Boeing Company be ordered to produce all of the subpoenaed documents within 14 days, without objection; and that the Court provide all additional relief that it deems appropriate.

Dated: May 20, 2019

WILLIAMS & CONNOLLY LLP
Edward C. Reddington (*pro hac vice forthcoming*)
William B. Snyderwine (*pro hac vice forthcoming*)
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
ereddington@wc.com
wsnyderwine@wc.com

*/s/* Frederic R. Klein

GOLDBERG KOHN LTD.
Frederic R. Klein
55 East Monroe, Suite 3300
Chicago, IL 60603
Telephone:  (312) 201-3908
Facsimile:  (312) 863-7408
frederic.klein@goldbergkohn.com

*Attorneys for SPS Technologies, LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 20, 2019, I electronically filed the foregoing **MOTION TO ENFORCE SUBPOENA FOR THE PRODUCTION OF DOCUMENTS ISSUED TO THE BOEING COMPANY** with the Clerk of Court using the CM/ECF system and served a copy of the foregoing document via electronic mail and certified registered mail to the following:

Jeffrey M. Hanson
Perkins Coie LLP
1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099
JHanson@perkinscoie.com
Telephone: (206) 359-3206
Facsimile: (206) 359-4206

*Counsel for The Boeing Company*

Duane R. Lyons
Chris A. Mathews
Tigran Guledjian
Patrick Schmidt
Nima Hefazi
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90014
duanelyons@quinnemanuel.com
chrismathews@quinnemanuel.com
tigranguledjian@quinnemanuel.com
patrickschmidt@quinnemanuel.com
nimahefazi@quinnemanuel.com
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Counsel for Briles Aerospace, Inc. and Michael Briles*

William A. Molinski
Alyssa B. Caridis
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
wmolinski@orrick.com
acaridis@orrick.com
Telephone: (213) 629-2020
Facsimile: (213) 612-2499

*Counsel for Robert Briles*

      */s/* Frederic R. Klein