UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPS TECHNOLOGIES, LLC d/b/a<br>PB FASTENERS,<br><br>                Petitioner,<br><br>  v.<br><br>THE BOEING COMPANY,<br><br>                Respondent. | Case No. 19 C 3365<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Petitioner SPS Technologies, LLC d/b/a PB Fasteners ("PB Fasteners") moves to enforce a subpoena directed to The Boeing Company, a non-party in a trade secrets case being litigated in the United States District Court for the Central District of California. After PB Fasteners' motion was fully briefed, the Court heard oral argument on May 28, 2019. For the reasons explained below, Petitioner's Motion to Enforce Subpoena for the Production of Documents Issued to The Boeing Company [1] is granted in part and denied in part. The Boeing Company shall comply with this Opinion by June 18, 2019. A status hearing is set for June 20, 2019 at 9:15 a.m.

## BACKGROUND

PB Fasteners is a designer and manufacturer of high-strength aerospace fasteners "with more than fifty years of experience in the industry." (Doc. 1-1 at 71, First Am. Cmplt. ¶ 1). PB Fasteners' website says that it "is best known for [its] developed Taper-Lok® and SLEEVbolt® fastening systems, which are used to enhance structural performance and manage electromagnetic effects in composite and multi-metal structure." https://www.pccfasteners.com/companies/pcc-fasteners/pb-fasteners.html. PB Fasteners alleges that its "tapered bolt and sleeve are made and assembled with confidential and proprietary specifications, dimensions, and processes, which are

essential to the proper manufacture and functioning of the SLEEVbolt®" and were developed through many years of research and testing. (First Am. Cmplt. ¶¶ 5, 6). PB Fasteners claims that these "specifications, dimensions, and processes are not generally known or readily ascertainable." *Id*. ¶ 6. PB Fasteners also alleges that it has made extensive efforts to maintain the secrecy of its SLEEVbolt® information. *Id*.

The primary consumer of the SLEEVbolt® system is The Boeing Company, which has been a customer of PB Fasteners for more than forty years. (First Am. Cmplt. ¶ 7). Boeing and PB Fasteners have a contract for the production of SLEEVbolts® for use in Boeing's composite 787 aircraft as well as short-term purchase orders for the production of SLEEVbolts® for Boeing's composite 777X aircraft. *Id*. The contract for the 787 aircraft requires Boeing to purchase 90% of the SLEEVbolt® requirements for its 787 aircraft from PB Fasteners through December 31, 2021. *Id*. ¶¶ 7, 44. As part of their contractual and ongoing business relationship, PB Fasteners gave Boeing access to its propriety SLEEVbolt® information, which Boeing needed to properly inspect and approve the SLEEVbolts® and integrate them into its aircraft assembly process. *Id*. ¶ 7. PB Fasteners alleges that it "communicated all proprietary information to Boeing with the explicit condition that the information would remain confidential." *Id*.

The underlying case in the Central District of California arises in part from the alleged trade secret misappropriation of PB Fasteners' SLEEVbolt® system by Briles Aerospace, Inc., Michael Briles, and Robert Briles (collectively the "Briles Defendants"). PB Fasteners and Briles Aerospace are competitors in the aerospace fastener market. (First Am. Cmplt. ¶ 97). In May 2011, Michael Briles was the Director of Sales and Marketing at PB Fasteners. *Id*. ¶¶ 8, 59. Thereafter, after leaving PB Fasteners, Michael Briles founded Briles Aerospace, Inc. in May 2012. *Id*. ¶ 8. Briles Aerospace initially provided standard products and services for the aerospace

industry. *Id*. Robert Briles is the uncle of Michael Briles. *Id*. ¶ 18. Before May 2011, Robert Briles was the President of PB Fasteners. *Id*. ¶¶ 18, 54.

PB Fasteners alleges that in 2016, Briles Aerospace "launched a campaign to misappropriate the SLEEVbolt® system and attempt to manufacture and sell it." (First Am. Cmplt. ¶ 18). As part of this alleged campaign, Briles Aerospace recruited nine current and former PB Fasteners employees with "detailed knowledge of PB Fasteners' proprietary information." *Id*. ¶¶ 9, 71. PB Fasteners also alleges that Michael Briles and Robert Briles shared PB Fasteners' confidential and proprietary information with Briles Aerospace. *Id*. ¶¶ 57, 67. In addition, PB Fasteners claims that Briles Aerospace worked with Boeing to obtain the necessary qualifications to produce the SLEEVbolt® by gaining access to PB Fasteners' proprietary information through documents, in-person meetings, and telephone calls with Boeing representatives. *Id*. ¶¶ 10, 78. PB Fasteners believes that Briles Aerospace worked with and encouraged Boeing to issue a new Request for Proposal ("RFP") in September 2018 for a SLEEVbolt® with a minor machined "notch" on the head of the tapered bolt. *Id*. ¶¶ 11, 79-80. Briles Aerospace provided a proposal in response to the RFP and began limited SLEEVbolt® deliveries to Boeing in late 2018. *Id*. ¶¶ 13, 93. PB Fasteners maintains that the "shape of the head of the protruding bolt is irrelevant to the actual functioning of the SLEEVbolt® because it plays no role in the sleeve expansion" and the "notched" SLEEVbolt® "is essentially the same as the SLEEVbolt® that does not contain the notch." *Id*. ¶¶ 81, 82.

In connection with the RFP, Boeing disclosed to PB Fasteners that it had qualified another manufacturer, Lisi Aerospace Canada, to provide tapered sleeve bolts. (First Am. Cmplt. ¶ 12). Litigation between PB Fasteners and Lisi Aerospace is currently ongoing in Montreal Superior Court. (Doc. 1, at 3 n.2). PB Fasteners claims that Boeing similarly facilitated Lisi Aerospace's

misappropriation of PB Fasteners' trade secrets. PB Fasteners contends that neither Briles Aerospace or Lisi Aerospace "could have obtained the necessary qualifications without misappropriating PB Fasteners' proprietary information." (First Am. Cmplt. ¶ 12).

On November 9, 2018, PB Fasteners filed a complaint against Briles Aerospace in the United States District Court for the Central District of California. PB Fasteners later filed its First Amended Complaint adding Michael Briles and Robert Briles as defendants. PB Fasteners' First Amended Complaint contains ten causes of action: violation of Defend Trade Secrets Act, 18 U.S.C. §1836 *et seq*. (First Cause of Action against Briles Aerospace); violation of California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq*. (Second Cause of Action against Briles Aerospace); violation of Lanham Act, 15 U.S.C. § 1051 *et seq*. (Third Cause of Action against Briles Aerospace); violation of California False Advertising Law, Cal. Civ. Code § 17500 (Fourth Cause of Action against Briles Aerospace); violation of California Unfair Competition Law (false advertising), Cal. Civ. Code § 17200 (Fifth Cause of Action against Briles Aerospace); intentional interference with contractual relations (Sixth Cause of Action against Briles Aerospace); violation of California Unfair Competition Law (interference), Cal. Civ. Code § 17200 (Seventh Cause of Action Against Briles Aerospace); intentional interference with prospective business relations (Eighth Cause of Action against Briles Aerospace); breach of contract (Ninth and Tenth Causes of Action against Michael Briles and Robert Briles). (First Am. Cmplt. ¶¶ 110-189).

Boeing is not a party to the action in the Central District of California. On March 7, 2019, PB Fasteners served Boeing with a subpoena to produce documents in connection with the underlying litigation. Boeing objected to the subpoena on various grounds, including relevancy, burdensomeness, and proportionality, on March 19, 2019. After negotiations, PB Fasteners substantially narrowed the number of custodians and date ranges it proposed to be searched. BP

Fasteners and Boeing agreed on seven Boeing custodians whose documents would be searched, six of twelve search terms, and a date range of January 1, 2016 through March 29, 2019. (Doc. 15 at 4; doc. 19 at 1). Boeing's proposal hit on approximately 20,000 documents, while PB Fasteners' proposal hit on approximately 40,000 documents. (Doc. 15 at 4). Boeing states that its proposal to review 20,000 documents will cost approximately $70,000 and PB Fasteners' additional search terms would impose nearly $70,000 in extra costs on Boeing. *Id*. at 9. Fact discovery closes on June 28, 2019 in the underlying lawsuit, and the case is set for trial on October 11, 2019. Against this factual backdrop, the Court considers PB Fasteners' motion to enforce its subpoena.

## DISCUSSION

Rule 45 of the Federal Rules of Civil Procedure governs subpoenas directed to non-parties. Rule 45(d)(2)(B)(i) provides that a party serving a subpoena may move for an order compelling production in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). As for relevance, "[t]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Williams v. Blagojevich*, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008); *see also* Advisory Committee Notes regarding 1991 Amendments to Rule 45(a)(2) (stating a "non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."). Rule 26(b)(1) allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The factors relevant to the proportionality inquiry are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

A party issuing a subpoena must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Moreover, "[w]hen a third-party is ordered to produce documents pursuant to a subpoena, 'the presumption is that the responding party must bear the expense of complying with discovery requests,' including requests for electronic data." *United States v. Cardinal Growth, L.P.*, 2015 WL 850230, at *2 (N.D. Ill. Feb. 23, 2015) (citation omitted). However, an order requiring compliance "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

At the outset, the Court notes that PB Fasteners' motion seeks to enforce the subpoena in full, and in this respect, Boeing requests denial of the motion. Boeing's Response also clarifies, however, that it remains willing to review and produce documents based on its proposed search terms. (Doc. 15 at 2). Thus far, Boeing has not produced any documents in response to the subpoena. At oral argument, PB Fasteners essentially limited its motion to the concessions it offered during the meet and confer process by presenting and relying upon a demonstrative exhibit summarizing the agreements and disputed areas between PB Fasteners and Boeing regarding the scope of the subpoena. (Doc. 19). As a result, the Court addresses the five disputed areas listed in PB Fasteners' demonstrative exhibit in turn below.

**A.     Documents Relating to Qualification and Development of Tapered Sleeve Bolt**

The first disputed area between PB Fasteners and Boeing relates to the qualification of suppliers and the development and/or manufacture of the tapered sleeve bolt (Subpoena Requests Nos. 1-9, 11-13, and 18). With respect to this first topic, the parties agree on five search terms: BPS-F-228*, BACB31AD*, BACB31AE*, BACB31AF*, and BACB31AG*. The first term is a Boeing part standard that generally incorporates the tapered sleeve bolt. Boeing's counsel

explained at oral argument that the asterisk at the end of the first term (BPS-F-228) captures a supplemental number associated with each manufacturer, such as Briles Aerospace or Lisi Aerospace. As the Court understands it based on counsel's oral representations, the last four terms refer to Boeing part standard names that only relate to particular tapered sleeve bolts which meet PB Fasteners' dimensions, which prior to September 2018 were only provided by PB Fasteners to Boeing. The different letters at the end of the last four bolt part standards relate to the materials the bolt is made of and the type of head on the bolt. For example, BACB31AD is a term that relates only to protruding head tapered sleeve bolts. (Doc. 1-1, at 50).

Boeing argues that only information relating to Briles Aerospace is relevant to PB Fasteners' claims in the underlying case. Therefore, to limit the number of potentially irrelevant documents to be reviewed, Boeing proposes that the terms "Briles* OR @brilesaerospace.com" (the "Briles search restriction") be included with the standard part searches because it seems unlikely "that a document submitted by or sent to Briles would have no indicia that it originated or went to Briles." (Doc. 1-1, at 56). PB Fasteners contends that Boeing's proposed Briles search restriction would exclude numerous relevant documents. PB Fasteners points to several types of documents that would not be available through Boeing's proposed Briles search restriction: (1) documents relating to Briles Aerospace that do not mention the word "Briles" or were not communicated from or to a Briles Aerospace email address; (2) documents relating to Lisi Aerospace; (3) documents transmitted by Briles Aerospace via Boeing's MessageCourier information exchange system; (4) documents relating to the ability of companies other than Briles Aerospace, including Lisi Aerospace, to duplicate PB Fasteners' dimensions and processes; and (5) Boeing's internal communications relating to PB Fasteners' dimensions and processes, even if not referencing Briles Aerospace. (Doc. 1-1 at 60-61).

In the context presented here, Boeing's proposed Briles search restriction is too limited. Initially, it is important to emphasize the narrow scope of the parties' agreed part standard terms, custodians, and date range (January 1, 2016 through March 29, 2019). PB Fasteners invented the SLEEVbolt® product, which Boeing incorporated into its part standards when it developed the 787 aircraft. Until September 2018, PB Fasteners was the only qualified manufacturer of the SLEEVbolt®. The five part standard search terms are thus, highly specific to PB Fasteners' product and dimensions and unlikely to hit on irrelevant documents given the agreed targeted date range and limited custodians. Moreover, as described above, PB Fasteners has sufficiently demonstrated that relevant documents may exist that do not specifically mention the word "Briles" or the Briles Aerospace email address.

In a discovery dispute such as this, the Court has to reach a balance – a balance on limitations within the search that will yield the largest set of relevant documents along with the smallest set of irrelevant documents. Courts do this, in part, by deciding on appropriate search terms, limiting the number of custodians, and determining an appropriate date range. In most cases, this is a judgment call and one left to the sound discretion of the Court reviewing and resolving the discovery dispute. Moreover, the Court generally has to make these decisions before the search and review is done, and thus it involves a certain degree of foresight about what inputted variables will result in the best possible output. In this case, the Court finds that the date range and the number of custodians already provide sufficient limitations on the search, and when combined with the use of PB Fasteners' part standard terms, the search is sufficiently surgical and targeted. Any further limitations, in the Court's view, runs too great of a risk that relevant documents will be excluded from production.

Boeing also claims that its communications with manufactures other than Briles Aerospace, including Lisi, Fastener Innovation Technology, and Space-Lok (Subpoena Request Nos. 6-9) have limited relevance to the issues in the underlying litigation and should be sought directly from those third parties. The Court disagrees. To succeed on its claim for misappropriation of trade secrets under the California Uniform Trade Secret Act (CUTSA), PB Fasteners must show: "(1) the existence and ownership of a trade secret, and (2) misappropriation of the trade secret." *Sun Distributing Co., LLC v. Corbett*, 2018 WL 4951966, at *3 (S.D. Cal. Oct. 12, 2018). "A claim for misappropriation under the Defend Trade Secrets Act ("DTSA") has substantially similar elements." *Id*. A "trade secret" is defined as information that: (1) derives independent economic value, actual or potential, from not being generally known to, or readily ascertainable through proper means, by another person who can obtain economic value from its disclosure or use and (2) is subject to reasonable efforts to maintain its secrecy. 18 U.S.C. § 1939(3); Cal. Civ. Code § 3426.1(d). Boeing's communications with fastener suppliers other than Briles Aerospace during the relevant time period is the exact type of information which may show whether PB Fasteners' dimensions and processes were known outside of PB Fasteners, the extent to which others can re-create the SLEEVbolt® without Boeing's help, and whether PB Fasteners' bolt dimensions could be reverse engineered. For instance, the communications may acknowledge that a trade secret exists as to PB Fasteners' dimensions and that its dimensions cannot be readily ascertained. The communications may also show Lisi Aerospace's inability to duplicate the tapered sleeve bolt dimensions without Boeing's assistance. Thus, evidence showing how the parts standards information unique to PB Fasteners' product was treated by Boeing and other tapered sleeve bolt manufactures is highly relevant to the existence of a trade secret, an essential element of PB Fasteners' CUTSA and DTSA claims. Moreover, Boeing's communications with

Lisi Aerospace are particularly relevant to the trade secret analysis as the only two tapered bolt sleeve manufacturers that Boeing has qualified since September 2018 are Briles Aerospace and Lisi Aerospace. Further, because Boeing is the principal consumer of tapered sleeve bolts, it is the best source for this information relating to the tapered sleeve bolts at issue in this case, rather than subjecting multiple fastener suppliers to subpoenas.

Considering the proportionality factors, the part standard information sought is also proportional to the needs of the case. The Court is mindful that Boeing is a third-party in this matter and not a defendant in the underlying litigation. The Court also recognizes the burden that a Rule 45 subpoena places on a third-party, who has to expend costs and resources to produce documents for a case where it will not ultimately obtain any direct relief.

Nevertheless, the balance of factors weigh in favor of PB Fasteners' proposal. The parties' resources factor favors neither party because there is no imbalance of resources here. PB Fasteners notes that Boeing has over 155,000 employees and in 2018 had over $100 billion in revenues. (Doc. 16 at 2). On the other hand, Boeing points out that PB Fasteners' corporate parent, Precision Castparts Corp., is wholly-owned by Berkshire Hathway Inc., and is one of the world's largest manufacturers of fasteners and castings for aerospace and other industries. (Doc. 15 at 6).

All the other factors weigh in favor of PB Fasteners' proposed part standard search without the Briles search restriction. First, the importance of the issues at stake in the underlying litigation is high. PB Fasteners alleges that Briles Aerospace misappropriated PB Fasteners' trade secrets, which were the result of many years of investment, research, and development, and disrupted its contractual and business relations with Boeing. Boeing is the dominant consumer in the domestic SLEEVbolt® market, and until late 2018, PB Fasteners was the exclusive manufacturer of the SLEEVbolt® for Boeing. In addition, Boeing is allegedly negotiating a long-term contract with

Briles Aerospace for tapered sleeve bolts that are subject to the contract with PB Fasteners. (First Am. Cmplt. ¶¶ 159, 175).

Second, the amount in controversy is potentially substantial. Although PB Fasteners has not alleged a precise amount of damages in its First Amended Complaint, the SLEEVbolt® "generates the vast majority of PB Fasteners' revenue." (First Am. Cmplt. ¶ 109). PB Fasteners claims it has "sustained and will continue to sustain significant harm and damages." *Id*. ¶¶ 116, 124, 135, 146, 152, 160, 166, 176, 183, 189. Specifically, PB Fasteners alleges that the Briles Defendants' conduct has caused it serious harm by, among other things, diminishing the value associated with its exclusive manufacture of the SLEEVbolt®, reducing the value of its proprietary information by diminishing its secrecy, misappropriating its industry reputation and goodwill, and diverting Boeing orders for SLEEVbolts® away from PB Fasteners. *Id*. ¶ 108.

Third, Boeing has the most access to the most relevant information. Although Boeing argues that certain responsive communications are equally or more conveniently available from PB Fasteners itself (Request No. 1), one of its divisions (Request No. 2), its corporate parent (Request No. 3), and the Briles Defendants (Request Nos. 4 and 5), other evidence potentially responsive to the part standard searches is in Boeing's exclusive possession. For example, Boeing's internal documents and communications relating to the specific part standards would be in the exclusive possession of Boeing even if those documents do not specifically refer to Briles Aerospace. PB Fasteners' inability to obtain that information from others or through independent means weighs in favor of eliminating the Briles search restriction from the part standard searches.

Finally, part standard term searches without the Briles search restriction do not impose an undue or substantial burden on Boeing. At oral argument, Boeing's counsel estimated that the bulk of the additional $70,000 in costs would be the result of the removal of the Briles search

limitation and the addition of the search for documents relating to Lisi Aerospace, which is the third disputed area below. The Court recognizes that reviewing the additional hits generated by removing the Briles search restriction will create some burden, but any such burden is not undue or significant given the limited scope of the requests to the particular dimensions of PB Fasteners' tapered sleeve bolts, the date restrictions and limitations of custodians, the potential probative value of responsive information, and the alleged central role Boeing played in the events at issue in the litigation. Moreover, Boeing has been and will continue to be directly involved in the underlying litigation. Two Boeing employees, Todd Hubbell and Joseph Hinton, provided declarations to Briles Aerospace in opposition to PB Fasteners' preliminary injunction motion and many Boeing witnesses will be deposed and testify at trial. (Doc. 16 at 2). For these reasons, the likely benefit of removing the Briles search restriction greatly outweighs the additional expense imposed on Boeing in producing responsive documents.

Under all of these circumstances, the balance of the proportionality factors weigh in favor of PB Fasteners' search proposal. Accordingly, PB Fasteners' motion to enforce is granted with regard to the first disputed area.

**B.     Dimensional Submissions by Briles Aerospace to Boeing**

As to the second disputed area, PB Fasteners seeks all submissions of tapered sleeve bolt dimensions by Briles Aerospace to Boeing (Subpoena Request Nos. 4, 5, 12). PB Fasteners proposes the five part standard terms without the Briles search restriction. Boeing has proposed no other search terms for identifying all submissions of dimensions by Briles Aerospace unless they are captured by the five part standard terms with the Briles search restriction. Again, Boeing's proposed search scope is too narrow. The tapered sleeve bolt dimensional submissions by Briles Aerospace to Boeing go to the heart of PB Fasteners' misappropriation claims. Boeing's counsel

acknowledged at oral argument that the dimensional submissions given by Briles Aerospace to Boeing are relevant for purposes of PB Fasteners' case against the Briles Defendants. Boeing's counsel argued, however, that Briles Aerospace should have a copy its dimensional submissions submitted to Boeing. Boeing also contends that PB Fasteners' presumption that information Boeing received from Briles Aerospace through Boeing's MessageCourier system would not contain the word "Briles" is speculation.

Contrary to Boeing's position, discovery to date in the underlying case demonstrates that Briles Aerospace submitted documents with dimensional data to Boeing which do not include the terms "Briles* or @brilesaerospace.com." At oral argument, PB Fasteners' counsel explained that dimensional submissions to Boeing are generally Excel spreadsheets with a list of dimensions which may not necessarily contain any reference to Briles Aerospace. PB Fasteners' counsel represented that a document produced in discovery shows that Briles Aerospace submitted dimensions in the form of a spreadsheet which mentions the part standard terms but does not include the terms "Briles* or @brilesaerospace.com." PB Fasteners' counsel also stated that Michael Briles testified at his deposition that he submitted several versions of Briles Aerospace's tapered sleeve bolt dimensions to Boeing through its MessageCourier system, he no longer has access to those submissions, and he did not retain a copy of those submissions. Further, as explained above, the removal of the Briles search restriction does not impose an undue burden on Boeing. As a result and in light of the evidence that Briles Aerospace does not possess all of its dimensional submissions of its proposed tapered sleeve bolt and the potential that Boeing's search protocol would not capture all of these highly relevant documents even if they do not explicitly reference Briles Aerospace, PB Fasteners' motion to enforce is granted with respect to the second disputed area.

## C. Boeing's Documents Relating to Lisi Aerospace

The third disputed area concerns PB Fasteners' request for documents relating to Lisi Aerospace (Subpoena Request Nos. 6, 12). PB Fasteners proposes two custodians, a date range of September 1, 2015 to the present, and the term "Lisi' with other taper sleeve bolt terms or "notch*", or "dimension*", or "diameter*". (Doc. 19 at 2). At oral argument, PB Fasteners' counsel explained that this search has a slightly different date range because Lisi Aerospace and Boeing started interacting with respect to a tapered sleeve bolt at an earlier date. Boeing repeats its argument that documents relating to Lisi Aerospace are not relevant to the claims and defenses at issue in the underlying litigation and in any event, should be sought directly from Lisi Aerospace. But, as discussed above, documents relating to the ability of other manufacturers to develop and manufacture the tapered sleeve bolt is highly relevant to whether PB Fasteners' dimensions and processes were generally known or readily ascertainable, whether its tapered sleeve bolt dimensions could have been reverse engineered, and whether its information was treated as confidential and proprietary. Thus, the Lisi Aerospace information is directly relevant to the existence of a trade secret, a key disputed issue in the underlying case. Also, as explained above, Boeing is the best source for documents relating to the development of the tapered sleeve bolt by other fastener manufacturers, including Lisi Aerospace. Regarding burden, PB Fasteners' proposal regarding information relating to Lisi Aerospace would yield between 10,300 and 14,048 additional documents. (Doc. 15-1 at 7). Considering Boeing's alleged role in the events of the case and the central importance of this information to PB Fasteners' misappropriation claims, the Court finds that the burden imposed by reviewing these additional documents related to Lisi Aerospace is not undue or significant.

D.  **Boeing's Purchasing Information**

The next disputed area involves PB Fasteners' request for Boeing's purchase information for tapered sleeve bolts which meet PB Fasteners' dimensions (Subpoena Request Nos. 15-17). PB Fasteners seeks production of all Boeing purchase orders or transactional data relating to any manufacturer of tapered sleeve bolts for the period beginning January 1, 2017. PB Fasteners also requests documents from January 1, 2017 to the present relating to projected purchases of tapered sleeve bolts for Boeing aircraft. Boeing argues that its tapered sleeve bolt purchasing information with Briles Aerospace may be obtained directly from Briles Aerospace.

Boeing's purchasing information related to tapered sleeve bolts that meet PB Fasteners' dimensions is highly relevant to PB Fasteners' damages claims as it may indicate lost purchase opportunities. Boeing's total demand for tapered sleeve bolts is also relevant to its claim that Briles Aerospace has disrupted PB Fasteners' contract with Boeing which requires Boeing to purchase 90% of its SLEEVbolt® requirements from PB Fasteners. Boeing is the most logical and direct source of information relating to its purchases and the overall demand for tapered sleeve bolts because it is the only customer of tapered sleeve bolts manufactured by Briles Aerospace, Lisi Aerospace, and PB Fasteners. To the extent some of the information sought could be obtained directly from Briles Aerospace and Lisi Aerospace, it is more expedient for Boeing to produce the information. Boeing's suggestion at oral argument that PB Fasteners can rely in part on its own sales forecasting and estimates of the size of the market to calculate damages is rejected as PB Fasteners' sales forecasts and estimates are not an adequate substitute for the actual lost purchase orders and total demand. Boeing has provided no estimate or evidentiary support showing how much time or expense would be involved in responding to PB Fasteners' requests for purchasing

15

information and therefore, its burdensome objection is overruled in this regard. PB Fasteners' motion to enforce is granted as to the fourth disputed area.

E.     **Boeing's Communications with Briles Aerospace's Counsel**

The fifth and final area of disputed documents includes Boeing's communications with Briles Aerospace's counsel from January 1, 2017 to the present relating to the litigation between PB Fasteners and Briles Aerospace. Boeing asserts that a common interest privilege with Briles Aerospace covers the documents at issue. The common interest doctrine is "an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). The doctrine applies "where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise." *Id*. at 816.

Boeing's blanket claim of privilege over its communications with Briles Aerospace's counsel is insufficient to deny production. *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) ("The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements."). Rule 45(e)(2)(A) requires an entity withholding subpoenaed information under a claim of privilege or work product to (1) "expressly make the claim" and (2) "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). Without a privilege log, neither PB Fasteners nor the Court can assess Boeing's claim of privilege.

However, at this time, the Court will exercise its discretion and order that Boeing either produce or log communications with Briles Aerospace's counsel up to the date of the filing of PB Fastener's Complaint. Ordering review and production of communications post-Complaint runs the risk of including too many irrelevant documents being swept into the review, such as communications relating to the availability of witnesses, scheduling matters, document production, and other communications between counsel in the normal course of managing litigation that have nothing to do with the underlying merits of PB Fasteners' claims.

As required by Rule 45(e)(2)(A), Boeing shall produce a privilege log for any communications that it believes are protected. *Wi-LAN v. LG Electronics, Inc.*, 2011 WL 148058, at *4 (N.D. Ill. Jan. 18, 2011) (declining "to quash the entire subpoena on such a sweeping claim of privilege . . . . the better approach is to allow CFIR/Perri to simply assert their privileges document-by-document.") If they are not protected, Boeing shall produce responsive documents in accordance with the limitations described above.

## CONCLUSION

For these reasons, PB Fasteners' Motion to Enforce Subpoena for the Production of Documents Issued to The Boeing Company [1] is granted in part and denied in part. Boeing shall comply with this Opinion, including production of a privilege log, by June 18, 2019. Documents produced in response to the subpoena shall be subject to the protective order in the underlying case. A status hearing is set for June 20, 2019 at 9:15 a.m.

**SO ORDERED.**

Dated: June 7, 2019

_____
Sunil R. Harjani
United States Magistrate Judge